Adam Budesheim
Ashley L. Turner
**McCarter & English, LLP**
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
(973) 622-4444
abudesheim@mccarter.com
aturner@mccarter.com
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| HORIZON HEALTHCARE SERVICES, INC., | : : : | Civil Action No. |
| Plaintiff, | : : | **COMPLAINT AND DEMAND FOR TRIAL BY JURY** |
| v. | : : : | |
| ATLANTIC SPECIALTY INSURANCE COMPANY and HOMELAND INSURANCE COMPANY OF NEW YORK, | : : : : | |
| Defendants. | : : | |

Plaintiff Horizon Healthcare Services, Inc. ("Horizon"), by its counsel, asserts the following claims against defendants Atlantic Specialty Insurance Company ("Atlantic Specialty") and Homeland Insurance Company of New York ("Homeland") and alleges:

### NATURE OF ACTION

1.      Plaintiff brings this coverage action against the defendant insurance companies for: a declaratory judgment, pursuant to 28 *U.S.C.* § 2201, that defendants must provide coverage for defense and indemnity costs arising from a multidistrict litigation filed against Horizon in the Northern District of Alabama; and compensatory and consequential damages arising from Atlantic Specialty's and Homeland's anticipatory breaches of their insurance policies.

MEI 28268249v.7

## PARTIES

2.     Plaintiff Horizon is incorporated under the laws of the State of New Jersey and maintains its principal place of business at 3 Penn Plaza East, Suite PP-15D, Newark, New Jersey 07105-2248.

3.     Defendant Atlantic Specialty, upon information and belief, is incorporated under the laws of the State of New York and maintains its principal place of business at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

4.     Defendant Homeland, upon information and belief, is incorporated under the laws of the State of New York and maintains its principal place of business at 605 Highway 169 North, Suite 800, Plymouth, Minnesota 55441.

## JURISDICTION AND VENUE

5.     This Court possesses subject matter jurisdiction over this action pursuant to 28 *U.S.C.* §1332(a)(2) because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this action involves a dispute between citizens of different states.

6.     Venue properly rests in this Court pursuant to 28 *U.S.C.* §1391.

7.     This action is commenced, in part, pursuant to the Declaratory Judgment Act, 28 *U.S.C.* § 2201, *et seq*.

## FACTUAL ALLEGATIONS

### I.     The Insurance Policies

8.     Defendants sold to Horizon, for substantial premiums, the insurance policies identified below (collectively, the "Insurers' Policies").

### A.     Atlantic Specialty's Excess E&O Policy

9.     Atlantic Specialty sold to Horizon Managed Care Errors and Omissions Excess Indemnity Policy number MCX-1762-12, effective January 31, 2012 through January 31, 2013

- 2 -

("Atlantic Specialty E&O Policy"). A copy of the Atlantic Specialty E&O Policy is attached hereto as Exhibit A.

10.    The limit of liability of the Atlantic Specialty E&O Policy is $15,000,000 per claim and in the aggregate.

11.    Atlantic Specialty's E&O Policy provides follow-form errors and omissions liability coverage to Horizon, meaning it provides coverage to Horizon if the applicable underlying primary policy provides coverage to Horizon.  A copy of the primary E&O policy is attached hereto as Exhibit B.

12.    Atlantic Specialty's E&O Policy follows form to a primary policy that requires the insurer to pay "Loss" for any "Claim" first made during the policy period for a "Wrongful Act."  Primary E&O Policy, § I (Ex. B).

13.    "Loss" is defined to include "Defense Expenses and money which an Insured is legally obligated to pay as a result of a Claim, including settlements, judgments, compensatory damages, punitive or exemplary damages if insurable under the applicable law most favorable to the insurability of punitive or exemplary damages, prejudgment and postjudgment interest, and legal fees and expenses awarded pursuant to court order or judgment."  Primary E&O Policy, § II.K (Ex. B).

14.    "Claim" means, among other things, "a civil proceeding commenced by service of a complaint or similar pleading."  Primary E&O Policy, § II.B as amended by End. MCO-9031 (Ex. B).

15.    "Wrongful Act" is defined to mean "any actual or alleged act, error, or omission in the performance of, or any failure to perform, a Managed Care Activity."  Primary E&O Policy, § II.V (Ex. B).

ME1 28268249v.7

16.     "Managed Care Activity" is defined to include a number of services or activities performed by or on behalf of the Insured, including, but not limited to:   Provider Selection; Utilization Review; advertising, marketing, selling, enrollment, administration, or management; Claims Services; and/or establishing or maintaining health care provider networks.   Primary E&O Policy, § II.L as amended by End. MCO-7012 (Ex. B).

17.     "Defense Expenses means reasonable and necessary legal fees and expenses incurred by the Company or the Insured, with the Company's consent, in the investigation, defense, settlement and appeal of a Claim, including but not limited to, cost of expert consultants and witnesses, premiums for appeal, injunction, attachment or supersedeas bonds."   Primary E&O Policy, General Terms & Conditions, § II.F (Ex. B).

18.     The Atlantic Specialty E&O Policy is triggered when the limit of underlying coverage has been exhausted.   Atlantic Specialty E&O Policy, § I (Ex. A).

19.     Horizon paid substantial premiums to purchase Atlantic Specialty's E&O Policy, and Horizon has complied with all applicable terms and conditions of such Policy.

**B.     Homeland's Excess D&O Policy**

20.     Homeland sold to Horizon Management Liability Follow Form Excess Policy number DOX-00513-12, effective January 31, 2012 through January 31, 2013 ("Homeland D&O Policy").   A copy of the Homeland D&O Policy is attached hereto as Exhibit C.

21.     The limit of liability of the Homeland D&O Policy is $15,000,000 per claim and in the aggregate.

22.     Similar to the Atlantic Specialty E&O Policy, the Homeland D&O Policy provides follow-form coverage to Horizon.   A copy of the primary D&O policy is attached hereto as Exhibit D.

- 4 -

23.     The Homeland D&O Policy follows form to a primary policy that requires the insurer to pay "Loss arising from a Claim first made against" Horizon during the policy period "for any actual or alleged Wrongful Act." Primary D&O Policy, § 1 (Ex. D).

24.     "Loss" means, among other things, "damages, judgments, settlements, pre- and post-judgment interest, [and] Defense Costs." Primary D&O Policy, § 2(i) as amended by End. 17, 29 (Ex. D).

25.     "Claim" means, among other things, a civil action "which is commenced by: (i) service of complaint or similar pleading." Primary D&O Policy, § 2(a) as amended by End. 12, 24, 25 (Ex. D).

26.     "Wrongful Act" is defined broadly to mean "any breach of duty, neglect, error, misstatement, misleading statement, omission, or act" by or on behalf of Horizon. Primary D&O Policy, § 2(l) as amended by End. 12, 17, 19 (Ex. D).

27.     "Defense Costs" means "reasonable and necessary fees, costs and expenses consented to by the Insurer . . . resulting solely from the investigation, adjustment, defense and appeal of a Claim against the Insured." Primary D&O Policy, General Terms & Conditions, § 2(f) as amended by End. 25, 29 (Ex. D).

28.     The Homeland D&O Policy is triggered when the limit of underlying coverage "has been paid by the issuer(s) of the Underlying Insurance, the Insured or by another party on behalf, or for the benefit, of the Insured or the issuer(s) of the Underlying Insurance." Homeland D&O Policy, § I(E) (Ex. C).

29.     Horizon paid substantial premiums to purchase the Homeland D&O Policy, and Horizon has complied with all applicable terms and conditions of such Policy.

MEI 28268249v.7

## II.    Nature of the Underlying Action

30.    In 2012, numerous class actions were filed against various Blue Cross Blue Shield entities or member plans (the "Blue Plans") and the Blue Cross Blue Shield Association ("BCBSA"), alleging violations of antitrust laws.

31.    Horizon was a defendant in certain of these class actions and reported the claims to Atlantic Specialty and Homeland during the Policy Period in each of the respective Policies.

32.    In December 2012, the Judicial Panel on Multidistrict Litigation consolidated and transferred several of these actions to the United States District Court for the Northern District of Alabama, creating the MDL litigation styled *In Re: Blue Cross Blue Shield Antitrust Litigation*, Master File No. 2:13-cv-20000-RDP (the "Antitrust Litigation").

33.    In April 2017, subscribers to the various Blue Plans (the "Subscribers") filed a Third Amended Consolidated Class Action Complaint (the "Subscriber Consolidated Third Amended Complaint") against the Blue Plans, including Horizon, and the BCBSA.  A copy of the Subscriber Consolidated Third Amended Complaint is attached hereto as Exhibit E.  The term "Subscriber" refers to an individual who is covered under a health insurance plan issued by a Blue Cross Blue Shield Company.

34.    Also in April 2017, various medical providers (the "Providers") filed a Consolidated Fourth Amended Complaint (the "Provider Consolidated Fourth Amended Complaint") against the Blue Plans, including Horizon, and the BCBSA.  A copy of the Provider Consolidated Fourth Amended Complaint is attached hereto as Exhibit F.  The term "Provider" refers to any provider of medical services, including medical doctors, osteopaths, chiropractors, hospitals, ambulatory surgical centers, urgent care centers, etc.

MEI 28268249v.7

35.     The Subscribers and Providers allege, among other things, that the Blue Plans, including Horizon, violated federal antitrust laws and engaged in price fixing and/or anticompetitive activities.

36.     The allegations of the Subscribers and Providers in the Antitrust Litigation fall squarely within the coverage afforded by the Atlantic Specialty E&O Policy and the Homeland D&O Policy.

37.     Horizon provided notice of the Antitrust Litigation to all of its insurers, including Atlantic Specialty and Homeland, and demanded Atlantic Specialty and Homeland provide coverage for the Antitrust Litigation.

38.     Atlantic Specialty and Homeland retained insurance coverage counsel with respect to Horizon's claims ("Insurers' Counsel").

39.     On June 25, 2018, Horizon and its insurers, including Atlantic Specialty and Homeland, participated in a mediation session in an attempt to resolve insurance coverage issues arising from the Antitrust Litigation.

40.     The parties continued to discuss their positions following the mediation session.

41.     On August 2, 2018, Atlantic Specialty and Homeland withdrew from the mediation process.

42.     On November 19, 2018, Horizon asked Atlantic Specialty and Homeland to each provide a written coverage position in response to Horizon's request for insurance coverage for its costs arising out of the Antitrust Litigation.

43.     On December 6, 2018, Atlantic Specialty and Homeland expressly refused to provide Horizon with a coverage position.

44.     Homeland and Atlantic Specialty, moreover, advised that they will not permit Horizon to settle with its underlying insurers for anything less than full policy limits.

- 7 -

45.     According to Atlantic Specialty and Homeland, Horizon is not permitted to satisfy the underlying policies' limits of liability with its own contributions.

46.     As a result, Atlantic Specialty and Homeland take the position that if Horizon settles its coverage claims arising out of the Antitrust Litigation with its other insurers for anything less than full policy limits, the Atlantic Specialty and Homeland policies will not be triggered and Atlantic Specialty and Homeland will refuse to make any payment for Loss arising out of the Antitrust Litigation.

47.     Horizon anticipates that it may be called upon to fund a partial settlement of the Antitrust Litigation in the coming months.

48.     Moreover, through significant effort during the June 25, 2018 mediation session and protracted discussions following the mediation, Horizon and all of its other insurers, except Atlantic Specialty and Homeland, entered into a confidential settlement in principle regarding the other insurers' obligations with respect to the Antitrust Litigation.

49.     As a result, and in light of its potential funding obligation, Horizon seeks to resolve its coverage issues with respect to Atlantic Specialty and Homeland.

## COUNT I
## DECLARATORY JUDGMENT
### Against Atlantic Specialty

50.      Horizon incorporates by reference the allegations of Paragraphs 1 through 49 of this Complaint and makes them a part hereof as if fully set forth at length herein.

51.      Substantial premiums have been paid to Atlantic Specialty for coverage under the Atlantic Specialty E&O Policy, and Horizon has at all times complied with all relevant provisions of the policy.

52.      Atlantic Specialty contracted to pay Loss, including Defense Expenses, incurred as a result of a Claim.

53.      Atlantic Specialty fails to acknowledge its obligations to:  (a) fund Horizon's defense of the Antitrust Litigation; and (b) pay any judgment or settlement arising from the Antitrust Litigation.

54.      By reason of the foregoing, an actual and justiciable controversy exists between Horizon and Atlantic Specialty regarding their rights and obligations under the Atlantic Specialty E&O Policy.

55.      The rights, status and other legal obligations of Horizon and Atlantic Specialty remain uncertain and insecure, and this Court's entry of declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, Horizon respectfully requests that this Court issue a declaration that:

(a)      under the terms of the Atlantic Specialty E&O Policy, Atlantic Specialty has a duty to pay on behalf of Horizon defense and indemnity arising from the Antitrust Litigation within the limits of the Atlantic Specialty E&O Policy and in excess of underlying limits;

ME1 28268249v.7

(b)      under the terms of the Atlantic Specialty E&O Policy, Atlantic Specialty has a duty to indemnify and reimburse Horizon for the fees, expenses, and costs Horizon will incur in defense of the Antitrust Litigation;

(c)      Atlantic Specialty must reimburse Horizon for fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action pursuant to *Rule* 4:42-9(a)(6) of the Rules Governing the Courts of New Jersey; and

(d)      such other relief as the Court deems appropriate.

## COUNT II
## DECLARATORY JUDGMENT
### Against Homeland

56.      Horizon incorporates by reference the allegations of Paragraphs 1 through 55 of this Complaint and makes them a part hereof as if fully set forth at length herein.

57.      Homeland contracted to pay Loss, including Defense Costs, incurred as a result of a Claim.

58.      Homeland fails to acknowledge its obligations to:  (a) fund Horizon's defense of the Antitrust Litigation; and (b) pay any judgment or settlement arising from the Antitrust Litigation.

59.      By reason of the foregoing, an actual and justiciable controversy exists between Horizon and Homeland regarding their rights and obligations under the Homeland D&O Policy.

60.      The rights, status and other legal obligations of Horizon and Homeland remain uncertain and insecure, and this Court's entry of declaratory judgment will terminate the uncertainty and controversy giving rise to this proceeding.

**WHEREFORE**, Horizon respectfully requests that this Court issue a declaration that:

(a)      under the terms of the Homeland D&O Policy, Homeland has a duty to pay on behalf of Horizon defense and indemnity arising from the Antitrust Litigation within the limits of the Homeland D&O Policy and in excess of underlying limits;

(b)      under the terms of the Homeland D&O Policy, Homeland has a duty to indemnify and reimburse Horizon for the fees, expenses, and costs Horizon will incur in defense of the Antitrust Litigation;

(c)      Homeland must reimburse Horizon for fees, expenses and costs that it has incurred and will incur in bringing this insurance coverage action pursuant to *Rule* 4:42-9(a)(6) of the Rules Governing the Courts of New Jersey; and

(d)      such other relief as the Court deems appropriate.

### COUNT III
### ANTICIPATORY BREACH OF CONTRACT
### Against Atlantic Specialty

61.      Horizon incorporates by reference the allegations of Paragraphs 1 through 60 of this Complaint and makes them a part hereof as if fully set forth at length herein.

62.      Atlantic Specialty contracted to pay Loss incurred in connection with a Claim.

63.      Horizon has incurred, and continues to incur, Loss in the defense of the Antitrust Litigation.

64.      Horizon has fully performed any and all conditions required by the Atlantic Specialty E&O Policy.

65.      Horizon timely made a demand on Atlantic Specialty to acknowledge its obligations under the Atlantic Specialty E&O Policy.

66.      Atlantic Specialty refuses to acknowledge its obligation to fund Horizon's defense and resolution of the Antitrust Litigation.

67.     Moreover, Horizon intends to settle its claims for coverage with its other insurers arising out of the defense and resolution of the Antitrust Litigation.

68.     Atlantic Specialty, however, has indicated its intention to withhold coverage in the event Horizon settles with its underlying insurers for anything less than full policy limits.

69.     Atlantic Specialty also informed Horizon of its intent to file a declaratory judgment action against Horizon if it settles with its underlying insurers.

70.     Horizon, by reason of the foregoing, anticipates Atlantic Specialty will breach its obligations under the Atlantic Specialty E&O Policy, depriving Horizon of the benefit of the insurance protection for which substantial premiums have been paid.

**WHEREFORE,** Horizon demands judgment in its favor against Atlantic Specialty:

(a)     that the Atlantic Specialty E&O Policy provides coverage for the Antitrust Litigation;

(b)     for money damages, not limited to the Atlantic Specialty E&O Policy liability limits, including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest, arising from Atlantic Specialty's anticipatory breach of its policy;

(c)     for costs of suit;

(d)     for counsel fees pursuant to *Rule* 4:42-9(a)(6) of the Rules Governing the Courts of New Jersey; and

(e)     for such further relief the Court may deem just and proper.

### COUNT IV
### ANTICIPATORY BREACH OF CONTRACT
### Against Homeland

71.     Horizon incorporates by reference the allegations of Paragraphs 1 through 70 of this Complaint and makes them a part hereof as if fully set forth at length herein.

72.     Homeland contracted to pay Loss incurred in connection with a Claim.

MEI 28268249v.7

73.     Horizon has incurred, and continues to incur, Loss in the defense of the Antitrust Litigation.

74.     Horizon has fully performed any and all conditions required by the Homeland D&O Policy.

75.     Horizon timely made a demand on Homeland to acknowledge its obligations under the Homeland D&O Policy.

76.     Homeland refuses to acknowledge its obligation to fund Horizon's defense and resolution of the Antitrust Litigation.

77.     Moreover, Horizon intends to settle its claims for coverage with its other insurers arising out of the defense and resolution of the Antitrust Litigation.

78.     Homeland, however, has indicated its intention to withhold coverage in the event Horizon settles with its underlying insurers for anything less than full policy limits.

79.     Homeland also informed Horizon of its intent to file a declaratory judgment action against Horizon if it settles with its underlying insurers.

80.     Horizon, by reason of the foregoing, anticipates Homeland will breach its obligations under the Homeland D&O Policy, depriving Horizon of the benefit of the insurance protection for which substantial premiums have been paid.

**WHEREFORE,** Horizon demands judgment in its favor against Homeland:

(a)     that the Homeland D&O Policy provides coverage for the Antitrust Litigation;

(b)     for money damages, not limited to the Homeland D&O Policy liability limits, including direct, compensatory and consequential damages, together with pre-judgment and post-judgment interest, arising from Homeland's anticipatory breach of its policy;

(c)     for costs of suit;

(d)     for counsel fees pursuant to *Rule* 4:42-9(a)(6) of the Rules Governing the Courts

MEI 28268249v.7

of New Jersey; and

(e)     for such further relief the Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

Attorneys for Plaintiff,
Horizon Healthcare Services, Inc.

By: _____

Adam Budesheim
Ashley L. Turner
McCarter & English, LLP
Four Gateway Center
100 Mulberry Street
Newark, New Jersey 07102
abudesheim@mccarter.com
aturner@mccarter.com
(973) 622-4444

Dated:  January 30, 2020

ME1 28268249v.7